LEXINGTON BANK ET AL. V. JOHN SALLING.

FILED NOVEMBER 6, 1902. No. 12,186.

1. **Conveyance:** INCUMBRANCE: PERSONAL OBLIGATION. The conveyance of land subject to an outstanding incumbrance, imposes upon the purchaser no personal obligation to pay such incumbrance.

2. **Equity of Redemption:** PERSONAL LIABILITY. The fact that the amount of incumbrances upon land is taken into account by the purchaser in fixing the price which he is willing to pay for the equity of redemption, does not render him personally liable for the payment of such incumbrances.

ERROR from the district court for Dawson county. Tried below before SULLIVAN, J. *Reversed.*

*Warrington & Stewart,* for plaintiffs in error.

*George C. Gillan* and *Edward A. Cook, contra.*

SULLIVAN, C. J.

John Salling sued the Lexington Bank, George B. Darr and C. F. Spencer, and recovered against them a judgment

for $186.48. The action was instituted, tried and determined on the theory that defendants had assumed and agreed to pay a judgment in favor of G. D. Kohler which was a lien upon land conveyed by plaintiff to Spencer. The principal question debated by counsel, and the only one which we shall have occasion to consider, is whether there is in the record sufficient evidence to support the verdict. The essential facts are not in controversy. H. C. May, acting for himself only, got from defendants an offer to pay for the land in question "$1,600 above the mortgages and incumbrances." He then went to Salling and "contracted with him for his interest in the land for the price of six hundred dollars." Afterwards Darr, who was acting for himself and his co-defendants, reduced his offer from $1,600 to $1,000, on account, as he said, of the Kohler judgment and some other incumbrances, which would have to be paid. This offer was accepted and the land was conveyed by warranty deed "subject to all liens, mortgages and incumbrances now outstanding against said premises." In negotiating the sale May did not act as the agent of either plaintiff or defendants. "I was," he says, "acting for myself, in fact purchasing the land from Salling for a price and transferring it to a third party for a given price." He further testified that he was not Salling's agent in making the deal, but did represent him in making the transfer to Spencer. Being asked what, if anything, was said "at the time of the trade and sale as to incumbrances against the land," he answered: "The incumbrances against the land were spoken of and the claim or judgment lien in favor of Kohler among the rest. My recollection is that the Kohler claim or judgment was one of the amounts which was spoken of by Mr. Darr as standing against the land and which he would be required to pay when he asked to reduce the purchase price from $1,600 to $1,000 as mentioned above." Mr. May further testified as follows:

Q. State what was done with the claim of Kohler, that is his judgment, in the settlement for said land made with Salling?

A. It was deducted from the amount which we were first to get from Darr.

Q. If you state that the amount of said Kohler's judgment was deducted from the purchase price of said land, state what the defendant Darr said with reference to said judgment, if anything?

A. He said he would have to pay it. * * *

Q. What was the understanding and arrangement, if any, between you and defendant Darr as to the payment of the Kohler judgment? What did Darr say as to the payment, if anything?

A. Darr, in speaking of settlement at one time, which was the first mention made of the Kohler claim, which was the first and only knowledge that I had of said claim, said that there was a judgment in favor of Kohler against Salling standing of record as a lien against this land which would have to be paid and deducted it from the price which he was to pay us at that time. * * *

Q. Was it not the agreement that Spencer was to give Salling $1,000 for his equity of redemption in the land?

A. Spencer was to pay me $1,000 for a deed from Salling.

The foregoing is the only evidence tending to sustain the plaintiff's theory that defendants agreed to assume and pay the Kohler judgment. Our view of the transaction is that it was a sale of the equity of redemption for $1,000, and not a sale of the fee with an agreement by defendants to pay part of the purchase money by discharging the incumbrances against the land. There was never an offer made to sell or buy the land for $6,400, the consideration named in the deed; and there does not appear to have been at any time an estimate made by either May or Salling of the amount of the liens or incumbrances. Defendants' final offer was based upon a revised estimate of the liens and incumbrances which they supposed they would have to pay. It was not, however, an offer of $6,400 for the land, but an offer of $1,000 for the equity of redemption. It is true Darr said he would have to pay the Kohler judgment,

but that was only the assertion of a fact; it was not a promise; it was merely a reason given for reducing his original offer from $1,600 to $1,000. What was said and done with respect to the Kohler judgment was, of course, no more an agreement to pay it than was what was said and done with respect to the other incumbrances an agreement to pay them. It has long been settled in this state that the acceptance of a deed which in express terms conveys land subject to an incumbrance does not impose upon the grantee a personal obligation to pay the debt. He is in such case interested in discharging the incumbrance, but he owes neither the grantor nor the incumbrancer any duty arising *ex contractu*. The transaction being nothing more than the purchase of an equity of redemption, no implied agreement is deducible from it. The case is entirely different where the land itself is sold for an agreed price, and the grantee retains a part of the purchase money for the purpose of paying off liens or incumbrances. In the latter case, a duty in the nature of a trust is created and the failure of the grantee to pay the liens and incumbrances is, in substance, a failure to pay a part of the consideration. Cases illustrating the distinction between a sale of the land itself and a sale of the equity of redemption are *Green v. Hall*, 45 Nebr., 89; *Fiske v. Tolman*, 124 Mass., 254, 26 Am. Rep., 659; *Brewer v. Maurer*, 38 Ohio St., 543, 43 Am. Rep., 436; *Hamill v. Gillespie*, 48 N. Y., 556; and *Heid v. Vreeland*,* 2 N. J. Law Journal, 89. In *Fiske v. Tolman* the consideration recited in the deed was $11,000, and the conveyance was declared to be "subject, however, to a mortgage of $7,000, * * * which is part of the above-named consideration." The court held that a promise to pay the mortgage debt could not be inferred from the language quoted. In *Hamill v. Gillespie* it was held that an announcement made by an auctioneer to the effect that personal property about to be sold was subject to a chattel mortgage and that the purchaser would have to comply with the conditions thereof, did not impose a per-

* 30 N. J. Eq., 591.

sonal obligation upon a purchaser who heard the announcement and assented to it. In *Heid v. Vreeland* the decision of the vice chancellor was that "where the purchaser of land incumbered by a mortgage agrees to pay a particular sum as purchase money, and on the execution of the contract of purchase, the amount of the mortgage is deducted from the consideration and the land conveyed subject to the mortgage, the purchaser is bound to pay the mortgage debt, whether he agreed to do so by express words or not." The difference between that case and the case at bar is obvious. In that case the land was sold, the price agreed upon, and a definite part of the purchase money held back and set apart for the purpose of paying the mortgage. In the case at bar it was only the equity of redemption that was sold. The first offer of defendants was "$1,600 above the mortgages and incumbrances." The contract which May got from Salling was to sell Salling's "interest in the land" for $600. It was not stipulated orally or in writing—it was neither agreed nor understood—that defendants should do anything for the benefit or advantage of plaintiff except pay the $1,000.

The judgment, in our opinion, is without support in the evidence and should be reversed.

REVERSED AND REMANDED